UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MISAEL SANCHEZ,

    Plaintiff,

v.                                Case No: 6:17-cv-1785-Orl-22TBS

RM WIRELESS, INC. and MAYCOM, LLC,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Renewed Joint Motion for Approval of Settlement (Doc 18). This motion follows my recommendation to reject the parties' initial motion for approval, due to certain unexplained deficiencies (Docs. 16, 17). The parties have now addressed those deficiencies and, upon review, I respectfully recommend that the motion be **granted,** the settlement agreement be **approved**, and the case be dismissed with prejudice.

### Background

Plaintiff worked as a store manager for Defendant RM Wireless from May 2015 through June 2016; and for Defendant Maycom LLC from July 2015 to October 2016 (Doc. 14-1, ¶1). He filed this lawsuit on October 13, 2017, seeking allegedly unpaid overtime wages, liquidated damages, attorney's fees and costs under the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA") (Doc. 1). Plaintiff alleged he was misclassified as exempt from the overtime provisions of the FLSA, that he worked hours in excess of forty in a workweek, and that he was not paid for such work at 1.5 times his regular rate of pay (Doc. 1, ¶¶ 24-36).

Defendants filed an answer disputing Plaintiff's claims and allegations (Doc. 8). They maintain that Plaintiff was properly classified as an exempt manager and was not entitled to overtime pay (Id.).

The parties attended a settlement conference and afterwards reached an agreement to resolve Plaintiff's FLSA claims. The parties now seek Court approval of the settlement agreement (Doc. 18-1), and dismissal of Plaintiff's claims with prejudice.

## Discussion

*The Standard of Review*

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claims is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings

and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

*Analysis*

Under the parties' settlement agreement (Doc. 18-1) Plaintiff will receive $2,950 in unpaid overtime wages, $2,950 in liquidated damages, and $100 as consideration for a general release of claims. Plaintiff's counsel will receive $7,000, which represents $6,510 in fees, the $400 filing fee, and a $90 service of process fee. The Agreement also includes provisions regarding a mutual release (Provision 4), provision of a neutral reference (Provision 6), and other terms.

In my prior report and recommendation I explained why I believed several issues precluded approval. First, was the need to clarify the amount of Plaintiff's claim that he compromised. Second, was the need to explain the reasons for the compromise. Third, information was needed concerning the basis for an additional $1,990 in fees to be paid to Plaintiff's lawyer as part of the settlement. Fifth, I had concerns regarding the mutual general release of claims. Sixth, I rejected the broad definition of the Defendant/Released Party in the Settlement Agreement. The parties have addressed these issues in their amended motion and agreement.

As to the amount of the settlement, the parties have clarified that Plaintiff compromised $4,856 of his wage claim, and an equal amount ($4,856) of his liquidated damages claim. In his sworn interrogatory answers Plaintiff claimed damages of approximately $7,806 in unpaid wages, $7,806 in liquidated damages, $4,520 in

attorney's fees "to date" (11.30 hours at $400 per hour) and $490 in costs (Doc. 14-1). The amount agreed-to here is substantially less than the damages claimed. While I found the prior showing to be inadequate to justify such a large discount, these concerns have been ameliorated on the more complete showing in the instant motion.[1] Given the deference due a settlement in the absence of any countervailing factors, I find these amounts to be fair and reasonable.

With respect to the amount of attorney's fees, 29 U.S.C.§ 216(b) provides that in an FLSA action seeking unpaid wages and overtime the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id. Section 216(b) has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); see also Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir. 1987). In Plaintiff's January 10, 2018 answers to the Court's interrogatories (Doc. 14-1), he said his attorneys had incurred 11.30 hours at $400 an hour, for a total of $4,520. The parties state that counsel has expended 16.50 hours since then, for a total of $11,120 in claimed fees. Of this amount, the parties have agreed that counsel will receive $6,510. Although the parties claim that the rate of $400 per hour is reasonable in light of counsel's experience,[2] the Court does not and need not

---

[1] Among the reasons offered, there was a prior payment made to Plaintiff, although the parties dispute whether it is properly characterized as a setoff.

[2] Plaintiff's counsel Luis R. Amadeo, Esq., was initially admitted to the Supreme Court of Puerto Rico in 1996, the U.S. District Court for the District of Puerto Rico in 1997, the U.S. Court of Appeals for the First Circuit in 1998, the Supreme Court of Florida (Florida Bar) in 2002, the Middle District of Florida in 2003 and 2014, and the Southern District of Florida in 2006. Mr. Amadeo has been practicing employment law almost exclusively for 22 years.

Ms. Cynthia Gonzalez, Esq. was admitted to the Supreme Court of Puerto Rico in 1998, the U.S. Court of Appeals for the First Circuit in 1998, the U.S. District Court for the District of Puerto Rico in 1999, the U.S. District Court for the Northern District of Florida in 2005 and 2015, the Supreme Court of Florida (Florida Bar) in 2008, and the U.S. District Court for the Middle District of Florida in 2008 and 2015. Ms. Gonzalez's practice also deals exclusively in matters involving employment law.

make such a finding, as the agreed-to fee ($6,510) divided by the number of total hours (27.80) equals an hourly rate of $234.17 - an amount that is well within the range of rates found to be reasonable for FLSA work in this district. See Cabrera v. The Fla. Express Bus, LLC, No. 8:13-CV-1850-T-35JSS, 2015 WL 12838182, at *3 (M.D. Fla. Oct. 6, 2015), *report and recommendation adopted sub nom*. Cabrera v. Fla. Express Bus, LLC, No. 813CV1850T35EAJ, 2015 WL 12853104 (M.D. Fla. Oct. 27, 2015) (collecting cases).

Additionally, the parties represent that the amount of attorney's fees was determined separately and apart from Plaintiff's recovery. This is normally sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to counsel. See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013). On this supplemented showing, I find the attorney's fees to be fair and reasonable.

The remaining issues concern the existence and scope of the mutual general release. "Pervasive, overly broad releases have no place in settlements of most FLSA claims." Bright v. Mental Health Res. Ctr., Inc., No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012). As Judge Dalton has noted:

> Though the parties represent that Plaintiffs will receive additional consideration for the inclusion of the General Release in the Settlement Agreements, the Court no longer approves such consideration because the value of a general release is incalculable. Additionally, as plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," concessions unrelated to the substance of the FLSA claims have no place in FLSA settlements. See Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010). Indeed, a plaintiff's FLSA claim—which is intended to remedy a defendants' violation of mandatory law— should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352

- 6 -

> (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, *a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.*

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (footnote omitted and emphasis added). Still, some judges in this district have approved general releases that were supported by additional consideration. Weldon v. Backwoods Steakhouse, Inc., No. 6:14-cv-79-Orl-37TBS, 2014 WL 4385593, at *4 (M.D. Fla. Sept. 4, 2014) (collecting cases); see also Smith v. Aramark Corp., No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *3-4 (M.D. Fla. Nov. 4, 2014) (approving settlement agreement providing separate consideration for general release, non-disparagement, and confidentiality provisions). Here, in addition to the wage issues, the parties represent that they had a dispute regarding allegations of misconduct by Plaintiff. Plaintiff maintained that he was "blackballed" by Defendants when seeking new employment. Consequently, all parties sought a mutual release of claims as a condition of settlement, and Plaintiff expressly requested a neutral references clause. The parties have agreed to a mutual release agreement, supported by additional consideration, wherein Plaintiff is released from any claims by Defendants, Defendants agree to provide Plaintiff neutral references, and Plaintiff agrees to release Defendants from any potential claims (Doc. 18-1,¶¶ 4(a)-(b), 6)). Under these circumstances, the release benefits both parties, does not appear to constitute overreaching, and gives finality to this controversy. On this showing, and as the release is now more narrowly crafted to remove the overbroad definition of "Defendant" I found previously objectionable, I cannot find the inclusion of the release vitiates the reasonableness of the settlement.

### Recommendation

Upon consideration, I **respectfully recommended** that:

1. The settlement be **approved** as a fair and reasonable compromise of a bona fide FLSA dispute;

2. This action be **dismissed with prejudice**; and

3. The Court close the file.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on April 16, 2018.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record